ISAAC MICHAEL *vs.* CAROLINE MORFY and ALBERT MOREY.

OBITER DICTUM: JURISDICTION IN EQUITY; PLEADING IN EQUITY.—Where the question of equitable jurisdiction is directly involved in the issues of law raised by demurrer to a bill, and the mind of the Court has been drawn to, and distinctly expressed upon, the subject, such expression cannot be considered *obiter dictum:*

ANTE–NUPTIAL CONTRACT,—CONSTRUCTION OF.—By an ante-nuptial agreement, in consideration of the proposed marriage, and of money, choses in action, book accounts, and other personal property of the wife, amounting to $4,250, thereby made over to the husband, the latter bound himself, his heirs, executors, &c., in the event of his surviving his wife, to pay a certain sum of money "to any child or children which she may leave, and in the event of leaving more than one child, to distribute and pay the said sum of money equally among all, share and share alike."—HELD:

1st. That it would be a most unnatural and forced construction of the contract to confine its general terms, which are broad enough to include all the children of the covenantee or *cestui que trust,* to those only which might be born *thereafter,* where such construction would exclude the issue of a former marriage from all benefit of the estate of the mother acquired before the contract was made.

2nd, That the issue of the former marriage is clearly within the letter as well as the spirit of the contract.

3rd. That the consideration of marriage is a valuable consideration, and not only sustains covenants in favor of the wife and the issue of the marriage, but also covenants for settlements in favor of children of a former marriage as a moral consideration.

4th. That in such case the children are regarded as purchasers; they may enforce the obligations of the contracting parties, notwithstanding the non-performance of mutual stipulations on the other side, unless they are conditional and dependent covenants.

5th. Although the defaulting party may not, in some instances, be allowed to enforce the articles specifically, the children, the innocent object of parental solicitude and care, are entitled to all the benefit of the uses under the settlement, notwithstanding there may have been a failure on one side.

6th. In a case like the present, where there is no pretence of misconduct on the part of the wife beyond the use of intemperate language and separation from the husband because of domestic troubles, the above principles apply with greater force.

APPEAL from the equity side of the Circuit Court for Frederick county.

The bill of complaint in this case was filed by the appellees against the appellant, its object being the recovery from the appellant of the sum of $4,250, with interest

from the 4th of February, 1854, under and by virtue of the following agreement between the appellant and Catharine Baker, his late wife, prior to their intermarriage :

"First, the said Catherine Baker being possessed in her own right of money, choses in action, book accounts and other personal property to the amount of four thousand, two hundred and fifty dollars, doth hereby transfer, assign and convey the same to the said Isaac Michael, his executors, administrators and assigns, and the said Isaac Michael, in consideration of the sum of four thousand, two hundred and fifty dollars, doth covenant and agree with the said Catharine Baker, her executors, administrators and assigns, to pay her, the said Catherine Baker, during her life, notwithstanding her coverture, the annual interest arising on the said sum of money, annually, in each and every year, for her sole, separate and exclusive use and benefit, free from his marital rights ; and in case the said Isaac Michael should die before the said Catherine Baker, he, the said Isaac Michael, doth bind his heirs, executors and administrators, to pay to the said Catherine Baker, her executors, administrators or assigns, the said sum of four thousand two hundred and fifty dollars, with any interest which may be due thereon.

"And it is further stipulated and agreed on, by and between the said parties, that any receipt signed by the said Catherine during her coverture, for the interest, shall be as full and complete a discharge as if she were sole.

"And it is further agreed by the said parties, that the said Catherine Baker shall be at full liberty to devise and bequeath the said sum of four thousand two hundred and fifty dollars, and any interest which may be due thereon, as if she were a *feme sole,* and that he, the said Isaac, will consent to any will or wills, or any codicil or codicils, which she, the said Catherine, may make during her coverture with the said Isaac Machael, and that he will assent

to the same in writing ; and in default of any will or codicil, he, the said Isaac Michael, binds himself, his heirs or administrators, in the event of his surviving, to pay the said sum of money to any child or children which she may leave, and in the event of leaving more than one child, to distribute and pay the said sum of money equally among all, share and share alike."

The bill of complaint alleges that the contemplated marriage took place, and the said contract thereby became of binding force between them; that the said Catharine, in pursuance of her power of disposition, did make, execute and publish her last will and testament in due form of law, an exemplified copy whereof was exhibited with said bill, by which she devised as follows :

"All the rest and residue of my estate, real, personal and mixed, I give and bequeath unto my daughter, Caroline M. Baker, her heirs and assigns forever."

The bill further alleges, that the said Catharine departed this life on the 28th day of February, 1858, without having revoked her said last will and testament, without having any child or children by the said Isaac Michael, and leaving the oratrix, then bearing the name of Caroline M. Baker, her only child ; that after the death of the said Catharine, on the 6th day of September, 1858, the appellees were united in the bond of matrimony ; that the appellant paid the interest to the said Catharine, during her life, up to the 4th of February, 1854 ; that the appellant has never paid any part of said interest since the said 4th day of February, 1854, to the said Catharine during her lifetime, or to any one else since her death, and the whole amount of the said sum of $4,250, with interest thereon, since the said 4th day of February, 1854, is still in the hands of the appellant due and unpaid, subject to the claim of the rightful claimants under the terms of the said marriage contract, or the appointment made in pursuance

thereof; and that at the time said Catharine united her-self in marriage with the appellant she was a widow and had but one child, the said oratrix, whose name at that time was Caroline M. Baker, and that she was very young and entirely dependant upon her mother.

The bill charges, that under the provisions of the said contract the $4,250 passed into the hands of the appellant, as a trustee, charged with the following trusts, and subject to the power of disposition of the said Catharine : in trust to pay the said Catharine during her life, in her separate right, the annual interest, and in case the said appellant should die before the said Catharine, then that the whole principal sum and interest should be paid to the said Catharine; also, on the further trust, that the said Catharine should have full power to devise and bequeath the said sum of $4,250, and the interest due, as if she were a feme sole, and in case the said Catharine should die without having exercised her said disposing power, then in the further trust to pay the said $4,250, and the interest due thereon, to any child or children the said Catharine might leave,— if more than one, equally between them, if only one child, then that one to receive the whole principal and interest; that the said Catherine, under the provisions of the contract, was entitled to nothing more than a life estate in the said $4,250, with power of appointing the same by her last will and testament, to any person or persons she might think proper ; and in case the said Catharine should die without exercising her power of appointment, then that the said principal sum of $4,250, and the interest due thereon, was limited over by the said marriage contract to the child or children which she might leave, as the case might be.

The bill further charges, that the said Catharine, in the residuary clause of her said last will and testament, and in the exercise of her disposing power, willed and bequeathed to the said oratrix by her then name of Caroline M. Baker,

her heirs and assigns forever: "All the rest and residue of her real and personal and mixed estate," and thereby appointed the said sum of $4,250, and the interest due thereon from her death, to be paid to the said oratrix, her heirs, executors and administrators. The bill charges, that the said orator and oratrix, in the right of the oratrix, are entitled to the said sum of $4,250, with interest thereon from the death of the said Catharine Michael, under and by virtue of the appointment in the residuary clause of the will of the said Catharine, or that the said orator and oratrix, in the right of the oratrix, are entitled to the said $4,250, with interest due thereon from the death of the said Catharine, under and by virtue of the limitation contained in the said marriage contract, as the only child the said Catharine left at the time of her death.; and that the said Isaac Michael has been frequently called upon to pay the said money since the death of the said Catharine, and that he has refused to pay the same and still refuses to do so.

The prayer of the bill is, that the said Isaac Michael may be compelled, by a decree, to pay to the said orator and oratrix the said sum of $4,250, and the interest thereon, to which they are entitled, or to bring the said sum of money into Court by a certain day to be fixed by a decree of the Court, to be paid over as might be directed by the order of the Court; and that the said Isaac Michael might be compelled fully to execute the trust reposed in him by the said marriage contract. The bill also prays for general relief in the case as made by the bill of complaint. The marriage contract marked A., No. 1, and the will of Catharine Michael, exhibit B., No. 2, are filed as exhibits with the bill. The appellant, in his answer, fully admits all the material facts and allegations of the bill of complaint, and rests his defence upon the following grounds: 1st. That the marriage contract is invalid, entered into by the said Catharine with an intent to deceive, and therefore

fraudulent and void. 2nd. That the said Catharine, after the marriage, refused to perform the duties imposed upon her by her marriage vows ; that she violated all she stipulations of the contract without cause, and thereby rendered all the covenants to be performed after her death null and void. 3rd. That the complainants, under the true construction of the marriage contract, have no right to claim, either in a Court of Law or Equity, the said $4,250, and the interest thereon from the period of the death of the said Catharine, or any part of it ; that the covenant in the marriage contract to pay the $4,250, and the interest thereon, to any child or children the said Catharine might leave, if more than one, equally between them, if only one, to that child, has no reference to the complainant, Caroline M. Morey ; that the covenant, according to its true construction and the intent of the parties, had reference alone to the issue of the marriage, and not to any child the said Catharine had by a former marriage. 4th. That all the trusts created by the covenants in the marriage contract, ceased at the death of the said Catharine ; that the complainants, if they have any right to said sum of money, can only assert their right in a Court of Law, and that a Court of Equity has no jurisdiction upon the subject matter in controversy. 5th. That the averments in the bill of complaint are insufficient and excepted to on that ground. The decision of the points suggested by the defendant's answer, will determine the case made by the bill and the rights of the complainants under the marriage contract.

After general replication and testimony taken by agreement of the parties, a *pro forma* decree was passed for the complainant for the purpose of taking the case to the Court of Appeals, requiring the defendant to pay, or to bring into Court to be paid, unto the complainants, the sum of four thousand, two hundred and fifty dollars, with interest thereon from the 28th of February, 1858, till paid or

brought into this Court to be paid, with the complainants' costs of this suit to be taxed by the clerk. From which decree the appellant prayed an appeal to this Court.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough and Weisel, J.

*Joseph M. Palmer* for the appellants.

The learned counsel for the appellees contend, that the questions submitted to the Court in the cause under consideration, are not now debatable. They insist, that the true construction of the marriage contract, and the question of jurisdiction, were "fully and clearly" settled by this Court, in a case between the same parties, reported in 18 *Md. Rep.*, 227. To this proposition we demur. There is no analogy in principle between that case and this. More of this, however, in its proper place.

The only object of the appellees is to recover the specific sum of four thousand, two hundred and fifty dollars, and the interest thereon, from the time of the death of the wife of the appellant.

The averments of the bill, filed by the appellees in the Circuit Court, are not sufficient to entitle them to the relief for which they pray. They have their action upon a covenant or contract entered into on the fourth day of March, 1850, between the appellant and one Catherine Baker, while *feme sole*, in contemplation of marriage. It is strictly a marriage contract, and not a marriage settlement; and the meaning and intention of the parties to it are to govern its construction, as in all other covenants. The bill charges that the appellant is the trustee for the appellees, and holds the said $4,250 in trust for them. That proposition cannot be sustained upon any principle. Marriage is the principal consideration for the contract, and immediately upon the marriage of the parties, the contract

became completely an executed contract, so far as the sum of $4,250 was involved.

We shall contend, that the appellees are not entitled to recover said sum of money in this action. Before the Court can come to a direct conclusion in the matter, we must carefully analyze the marriage contract, the covenants therein contained, and the meaning and intention of the contracting parties. The contract does not create any express trust for any purpose, and the law never will imply or presume a trust, except from absolute necessity. This is a principle indisputably settled in equity. *Hill on Trustees*, 144, 171. *Cook vs. Fountain*, 3 *Swanston*, 585, 591.

Lord HARDWICK defines a trust to be "such a confidence between the parties, that no action at law will lie, but is merely a case for the consideration of the Courts of Equity." Such a confidence, therefore, as would found an action at law, he would not have called a trust. *Stuart vs. Mellish*, 2 *Atkins*, 612. These principles are sustained by all the authorities.

In the case of a married woman, as in this case, where she has, by a marriage contract, property and rights secured to her, for her separate use and benefit, the law will, from necessity, presume a trust for the purpose of securing her separate property for her use and benefit; for by the strict rules of the common law, she is deprived by her marriage of all legal rights as against her husband. The act of marriage operates, at law, as an absolute gift to the husband of all chattels personal belonging to the wife, and all her choses in action, &c. *Clancy on Husband & Wife*, 155 to 158. 2 *Story's Equity*, secs. 1369 and 1370. *Hill on Trustees*, 407 and 408. 1 *Black. Com.*, 442. This is a general rule, with some exceptions; but to abate the rigor of the common law, a Court of Equity will interpose its aid and convert the husband into a trustee for the wife.

*Hill on Trustees*, 420, *top p.* 609. *Lee vs. Prideaux*, 3 *Browne's Ch. R.*, 383. *Parker vs. Brook*, 9 *Ves.*, 283. 3 *G. & J.*, 505. *Bennet vs. Davis*, 2 *P. Wms.*, 125.

The question now is, what was the extent and character of the trust confided to the appellant? A glance at the marriage contract will be sufficient to settle the question. The Court will be governed entirely by the true intent and meaning of the parties; and that intent and meaning must be collected from the contract itself, taking it all together. Catherine Michael did not, in her lifetime, execute the power of appointment by will. It seems to be perfectly clear from the true construction of the contract, that the appellant was trustee for his wife only, and for no one else. There was no necessity for a trustee for any other purpose. There certainly is nothing in the contract to justify the conclusion that the appellant was trustee for the appellees. The authorities on the subject of trusts exclude such an idea, for if the appellee, Caroline M. Morey, is the person entitled by the true construction of the covenants in the contract, to the money in question, she has a full, complete and adequate remedy in a Court of Common Law; and it is not absolutely necessary that a trust should be presumed to aid her in the recovery of it. The trust created for the benefit of the wife of the appellant ceased to exist, and was ended on the death of the wife, except so far as he had in his hands, at the time of her death, interest money which had accrued on said sum of $4,250 during her life, that was her trust fund. The question in relation to the balance of such trust money, was fully disposed of by the Court in the case of *Caroline Morey, executrix of Catharine Michael, vs. Isaac Michael*, 18 *Md. Rep.*, 227.

The counsel of the appellees contend, that the contract in question is a legal and valid contract. That was never denied. It is admitted that the contract, in its inception, was a valid and binding contract. The counsel have dis-

played much learning on the subject of marriage settlements, and the principles governing them.   In this case there is no marriage settlement to be considered by the Court.   The contract is strictly a marriage contract, containing covenants by which all parties to it are bound. The doctrine of the right by limitation in marriage settlements, submitted, has no sort of application.   The appellees do not pretend to claim the money in question by way of limitation, but, as *cestuis que trust*, against the appellant as trustee.

The bill charges, that the said sum of money passed into the hands of Isaac Michael, as trustee, charged with certain trusts.   This averment is not sustainable by the terms of the contract, except so far as the appellant was constituted trustee for his wife, to protect and secure her rights to the interest of said sum of money, as her sole and separate property, she having lost all her legal rights by her marriage with appellant.   This created the necessity of the interposition of the trustee for her.   The doctrine of limitation, therefore, cannot apply in this case.   This case rests entirely upon the covenant to pay a certain and specific sum of money, which is for a Court of Law, and not in confidence, which is for a Court of Equity.

The next question submitted is, that this Court, as a Court of Equity, has no jurisdiction.   This question of jurisdiction is an important question, and ought to be examined and settled deliberately, so as to prevent its recurrence in future cases.   It would seem to be clearly settled by all the authorities, that if the appellees have a complete and adequate remedy at law, they have no rights in a Court of Equity, except in cases where Courts of Law and Equity have concurrent jurisdiction.

1st. In this case the remedy at law is complete and adequate, and the aid of a Court of Equity cannot be necessary; the remedy is as effectual and complete in a Court of

Law as in a Court of Equity. *Story's Eq. Pl.*, *sec.* 473. *Mitf. Eq. Pl.*, (By *Jeremy*,) 123. "If it appears by the bill that the plaintiffs can have as effectual and complete a remedy in a Court of Law as in a Court of Equity, and that such remedy is clear and certain, the defendant may demur." 1 *Daniels' Ch. Practice*, 609. *Coop. Eq. Pl.*, 125.

In the case of *Bosley vs. McKim*, 7 *H. & J.*, 501, DOR-SEY, Judge, says : "Legal rights are to be asserted by legal means, and in such cases Courts of Equity never lend their aid where equity and justice do not imperiously demand it." If a bill in equity shows that the only object of the complainants is to recover a fixed, certain and liquidated sum, incapable of being entangled, the bill will be dismissed, as all difficulty of proceeding at law will be removed. *Smith vs. Marke*, 2 *Rand. R.*, 452. 2 *Cranch.*, 444. 4 *Wash. R.*, 352. 2 *Mason*, 270. If a trustee gives a covenant to perform the trust, he is suable at law. *Duvall vs. Craig*, 2 *Wheaton*, 55, 56.

"To give jurisdiction to equity, some part of the trust must remain unexecuted, some act remain to be done which rests in confidence. The mere relation between the parties of trustee and *cestui que trust* is not sufficient, there must be that trust which is a creature of a Court of Equity not cognizable at law." Per BALDWIN, Judge, in *Baker vs. Biddle*, *Baldwin's C. C. Rep.*, 422, 423. This is the true principle to be extracted from all the cases. *Roper vs. Holland*, 30 *Eng. C. L. Rep.*, 37.

The question of jurisdiction, as applied to this case, is not now a debatable question in this State. *Adair vs. Winchester*, 7 *G. & J.*, 117. *Oliver vs. Palmer & Hamilton*, 11 *G. & J.*, 443. *Hertle & Wife vs. Schwartze et al.*, 3 *Md. Rep.*, 366, 382. *Nelson, Ex'er of James, vs. Howard,* 5 *Md. Rep.*, 327.

It clearly appears from the proceedings in the case, that

the appellees have a full and adequate remedy at law. The prayer of the bill is, that the appellant be compelled by a decree of the Court to pay to the complainants the sum of $4,250, with interest thereon, &c., and the decree of the Circuit Court is, "that the defendant pay, or bring into this Court to be paid, unto the complainants, the sum of $4,250, with interest thereon from the 28th day of February, 1858, until paid." &c. There was certainly no necessity in this case to invoke the aid of a Court of Equity, to decree the payment of this fixed and certain sum of money; a Court of Law could do precisely the same thing without difficulty. Courts of Equity never will lend their aid where equity and justice do not imperiously demand it.

The counsel for the appellees contend, that there is nothing in the question of jurisdiction; that the question of jurisdiction was fully and clearly settled in the case of *Caroline Morey, executrix of Catharine Michael, vs. Isaac Michael*, 18 *Md. Rep.*, 227. How could the Court settle the question of jurisdiction in this case? This case was not then before the Court.

The Court only decided in that case that the complainant was entitled to relief, upon her bill, to the extent of the interest due at the decease of Catherine Michael, without affirming or reversing the decree below.

2nd. What was the true intent and meaning of Isaac Michael and Catherine Baker when they entered into the contract in relation to the payment of the said sum of money "to any child or children the said Catharine Michael might leave," &c.? It is submitted that the only true and sensible construction of the contract is, that the parties to it meant and intended by the words, "child or children," the child or children of the marriage which the said Catherine might leave at the time of her death, and that Caroline Baker was not intended to be embraced. This construction seems to be sustained by authority. 2 *Story's Eq.*

secs. 974-984. *Atherly on Marriage Settlements*, 93-101. 25 *Law Lib.*, 48-53. The case depends upon covenant, not upon a question of "strict settlement or limitation." If Catharine Michael died without having executed the power in the contract by will, and without leaving "child or children" answering the description designated in the covenant, the said sum of money belongs to Isaac Michael, the appellant, as the administrator for his deceased wife. For in this event, he became, in this State, her administrator by operation of law.

3rd. The questions now submitted are mixed questions of law and fact, depending upon the evidence in the case. The true theory of the complainants' case, as made by the bill, seems to be the specific execution of the contract in the case for the payment of the sum of money claimed. Assuming this to be the case, the complainants must come into this Court with clean hands—free from all taint—with a cause just and equitable in all its parts, free from all fraud, negligence and misconduct on the part of the claimants, or on the part of those under whom they claim, so as to satisfy the Court, beyond a reasonable doubt, that the application is fair, just and reasonable, in every respect. If the complainants cannot do this, the Court will refuse to interfere, and will leave the parties to their remedy at law. *Stoddert et al. vs. Bowie*, 5 *Md. Rep.*, 18-35. 4 *Md. Ch. Dec.*, 475. 6 *G. & J.*, 439. *Mundorf & Wife vs. Kilbourn et al.*, 4 *Md. Rep.*, 459. The specific performance of contracts in equity is not a matter of absolute right in the party, but of sound discretion in the Court. 1 *Md. Ch. Dec.*, 112. 8 *Gill*, 262. 2 *Md. Ch. Dec.*, 401. 4 *Gill*, 472. 3 *Cow. Rep.*, 445. 6 *Johns. Ch. Rep.*, 222. *Pegg vs. Corder*, 12 *Leigh*, 69-76.

A specific performance will never be decreed except where the legal remedy is inadequate, and something re-

mains to be done besides the mere payment of money. *Phyfe vs. Weddel*, 2 *Edwards' (N. Y.) Ch. R.*, 51.

Caroline Morey is not a party to the contract. She claims merely as a beneficiary ;—her contingent rights under the contract depend entirely upon the will and the acts of the parties to it. They could have defeated her contingent claim, if they had pleased to have done so by rescinding and vacating the contract. Mrs. Michael could have defeated the pretended claim of the appellee, Caroline Morey, by executing the power ; she could have bequeathed said sum of money, claimed by the appellees, to any one she pleased,— even to her husband, and any misconduct of Mrs. Michael during coverture, amounting to a violation of the covenants and stipulations on her part, and a violation of the marital rights, would defeat all the pretended rights of the appellees under the covenants in the contract. If Mrs. Michael had survived her husband, Isaac Michael, it would have defeated the claim of Caroline Morey.

We respectfully submit, that the true principle to be extracted from all the authorities, when carefully examined, is, that the misconduct and unfaithfulness of Mrs. Michael during coverture, as disclosed by the evidence in the case, was a full and complete forfeiture of all her rights under the covenants contained in the ante-nuptial contract, and a full discharge of Isaac Michael from all obligation imposed upon him by the contract and marriage. 1 *Daniels' Ch. Pr.*, 128. 2 *Story's Eq.*, 1419. 1 *R per on Husband and Wife*, 275. *Clancy on Husband and Wife*, 568, 569. *Carr vs. Estabrooke*, 4 *Ves.*, (*by Sumner*,) 146, note and authorities referred to. 2 *Story's Eq.*, sec. 1426. *Watkyns vs. Watkyns*, 2 *Atkins*, 96. 2 *Ves., Jr.*, 191. *Legard vs. Hodges*, 4 *Browne's Ch. Ca.*, 421. 1 *Ves., Jr.*, 477.

*Richard H. Marshall* and *Wm. J. Ross* for the appellees.

The only question under consideration is, is this mar-

riage contract good and of binding force, in derogation of the marital rights of the appellant?

In such a case, where a *feme sole* prior to her marriage settles her real or personal estate either upon herself, her children, or any other person, when her intended husband had notice of it before the marriage, there can at this day be no doubt as to the validity of such a settlement in equity and in law. *Atherly on Marriage Settlements,* 27 *Law Library,* 320. *Draper's Case, Freem. R.,* 29 and 497. *Newslead vs. Searl,* 1 *Atkins,* 264. *O'Neal vs. Cole,* 4 *Md. Rep.,* 107. But when the intended husband is a party to the marriage contract there can be no question as to its legal validity, because there can be no room for any inquiry as to its fraudulent import. In such case he, by his own act, excludes all such inquiries, because he has ratified and adopted the contract as his own, with full knowledge of its import and design. *Atherly on Marriage Settlements,* 27 *Law Library,* 320, 321, 322. *Slocombe vs. Glubb,* 2 *Brown's Ch. Rep.,* 545. In such a case the contract would be good as against the intended husband, even though he was an infant at the time of the contract. 2 *Brown's Ch. Rep.,* 545. Maryland chancery fully sustains this doctrine. In this case the appellant, Isaac Michael, was a party to the contract. He was no infant, but a sagacious man, and in full possession of all his mental powers. He was not operated upon by any fraudulent inducement, but voluntarily sought the alliance with the said Catharine, and entered into the said contract with full knowledge of what he was about to do, and with full knowledge of the import and meaning of the contract and of all its trusts, limitations and provisions. There is nothing disclosed in this record which can in the slightest degree even tend to impugn the purity or legal validity of the contract at the time it was entered into between the parties. It must consequently be regarded as a contract

of binding force in law and in equity. And this would be the case even though the settlement had been made in favour of children by a former marriage *nominatim* and specifically. *Atherly*, 27 *Law Library*, 327.

2nd. But the appellant insists, that the said Catharine, after marriage, violated her solemn contract of marriage without cause, and by her conduct rendered all the covenants contained in the said contract, to be performed after the death of the said Catharine, utterly null and void, and that he is not bound in equity to comply with or perform any of the covenants in the said marriage contract not to be performed in the lifetime of the said Catharine. If the marriage contract was of legal validity and of binding force at the consummation of the marriage, it clearly follows that the legal rights of those who could rightfully and legally claim under the limitations over contained in the said contract became fixed vested rights, subject only to be divested by the exercise of the disposing power reserved to to the said Catharine in her said marriage contract. In a former case, in the Court of Appeals, between these same parties, it was settled that Mrs. Michael had only a life estate in the $4,250, and that she died without having exercised her disposing power reserved to her in her marriage contract. *Caroline Morey, Ex'trix of Catharine Michael, and her husband, Albert Morey, vs. Isaac Michael,* 18 *Md. Rep.*, 227. The fixed vested rights of those who can legally and equitably claim under the limitations over contained in the said marriage contract, were not divested by the exercise of Catherine Michael's power of appointment, but still remain fixed vested rights by the terms of the said contract, and from its date.

If this be so, and it cannot be controverted, how can the fixed vested rights of third parties be in any mode affected by the acts of Mrs. Michael? Her conduct, whatever it may have been, clearly cannot in equity or law invalidate

the clear fixed vested rights of those whose rights are vested under the trust and limitation over contained in the said contract. 2 *Story's Eq.*, sec. 1420. 1 *Fonbl.*, *Bk.* 1, *ch.* 2, *note k.* *Clancy on Husband & Wife*, *Bk.* 5, *ch.* 11, *p.* 588. 3 *P. Wms.*, 269, 276.

3rd. It is further insisted upon by the appellant, "that under the true construction of the marriage contract, the complainants have no right to claim the $4,250, and the interest thereon, from the death of the said Catharine, under the limitation over contained in the said contract, to any child or children the said Catharine might leave, if more than one, equally between them, if but one, that one to receive the whole of the said real and personal estate." The appellant insists that the covenant contained in the said limitation over, in the case of the non-execution of the power of disposition, in the true construction of the contract, had reference to the issue of the intended marriage, and not to any child of the said Catharine by a former marriage. Can this be sustained? We think not. To ascertain and determine the meaning and proper legal construction of the contract, in a case like this, the terms of the contract as a whole, and the language employed to convey the intent of the parties, are carefully to be examined and interpreted according to their natural and legal import, and construed strictly, precisely as any other written contract or agreement ought to be construed under the rules of law and canons of construction. It will be observed that this is not a case where the Court of Chancery is called upon to enforce by its decree, articles of agreement for a marriage contract. Articles for a marriage contract are generally considered as nothing more than minutes, intended to specify in a concise mode the manner in which the parties intend the estate shall be limited. These articles for an intended contract are often carelessly drawn, and, therefore, to draw the actual final marriage settle-

ment and limitations in the words of the articles, or even according to their legal import and operation, the real intentions of the contracting parties would be often defeated. In such cases the great object of the Court is to ascertain the intention of the parties and to decree a strict settlement according to such intent. In aiming at the intent in such cases, the Courts are not confined to the strict rules of construction in interpreting the language employed by the parties, a more liberal rule is allowed, and the Courts will often resort to presumptions in favour of the issue. *Atherly on Marriage Settlements,* 27 *Law Library,* 92. *Blenfer vs. Duke of Marlboro,* 2 *Atkins,* 545. *Randall vs. Willis,* 5 *Vesey,* 275. Hence, where marriage articles construed according to their legal import, give the settler an estate tail, they will, generally speaking, be executed by the Court in strict settlement in favour of the issue, from presumed intent; therefore, if it is expressed in the articles that the estate shall be settled upon the husband and the heirs of his body, either general or special, a strict settlement will be decreed, though there is nothing in the articles expressly indicating that such was the intention. *Atherly,* 27 *Law Library,* 93. *Highway vs. Benner,* 1 *Bro. C. C.,* 384.

But where the contract is an actual, complete and final marriage contract, made before marriage and without any previous articles, a different rule of construction prevails. In such cases the agreement embracing the final, complete settlement as intended by the parties themselves, must be construed strictly, according to the strict legal rules of construction. In such cases there is no room for presumptions. The parties themselves have embodied in their own agreement their true intentions as conveyed by the language they have employed according to their natural legal import. If, therefore, by a settlement before marriage without articles, the estate is limited to the use of or in

trust for the settler for life, with remainder to the use of or in trust for the heirs of his body, he will be considered as a tenant in tail, though under articles so expressed, he would be considered as tenant for life only. *Atherly,* 27 *Law Library,* 151, 152.

Now the case under consideration is not the case of articles for a marriage contract, but one where the parties, previous to their marriage, entered into a full, complete and final marriage contract, fully executed, and all the settlements and limitations according to their intentions as conveyed by the strict, natural and legal import of the language they employed ; in such a case the strict rule of construction must prevail, and the trusts and limitations engrafted in the said contract, carried out and executed according to the intention of the parties, not from any presumption, but from the natural, legal import of the "contract itself." In a former case between these parties, as has already been stated, the Court of Appeals determined that Mrs. Michael died without having exercised her disposing power, and as a consequence the right of the parties, under the limitations over in the said marriage contract, was not divested, but remains in full force as limited in the said contract.

It is under these limitations over, contained in the said contract, that the complainants base their claim in the case made by their bill of complaint, as Mrs. Michael did not exercise her disposing power of appointment. The question then is, do the limitations over in the said contract embrace the complainant, Caroline M. Morey, as the only child Mrs. Michael did leave at the time of her death, upon the true legal construction of the said marriage contract?

There can be no doubt that Mrs. Michael could have made the said limitations over in favor of the anticipated issue of her marriage with the complainant, to the exclusion of the child of her former marriage, or she could have

made the said limitations over in favor of the child of her former marriage in exclusion of any anticipated issue by her marriage with the appellant, and the limitations over in either case would have been good in law and in equity. But she did not do so. For it must be observed, that there is no express limitation in the contract to any class of children, as a class, either to the children of the marriage or to any child she had by a former marriage. The language is general, and by its natural legal import will embrace any child of Mrs. Michael, either by a former marriage or by the appellant, as the case may be.

4th. But the appellant, in his answer, denies the jurisdiction of a Court of Chancery to grant relief in the case made by the bill of complaint, although the appellees may have a rightful claim to the fund, and insists that they have a clear remedy at law. The question then is, has the Court of Chancery jurisdiction in the case made by the bill? The appellee insists that the jurisdiction in such a case is undoubted.

The case arises upon an ante-nuptial contract and springs out of its true construction. The contract now under consideration, and which is sought by the bill to be enforced, presents a clear case of a trust with which the appellant is invested and bound to execute. In such cases a Court of Chancery has undoubted jurisdiction. There is no necessity for a trustee in such a case to perfect the trusts, the husband will be held to be a mere trustee for the purposes of the trust. 2 *Story's Eq.*, sec. 1380. 3 *Johns. Ch. Rep.*, 540.

A gift or grant of property to a grantee or donee to be applied to a certain use or purpose, fastens a trust on the holding of the legal estate. *Hill on Trustees*, 65. 2 *Ves., Jr.*, 335. 7 *Eng. L. & E. Rep.*, 134. 3 *Md. Rep.*, 505.

5th. The appellant excepts to the bill of complaint upon the ground of insufficiency in its averments. Upon what

he relies to sustain this exception, it is difficult to conceive. The bill fully states the whole case, and charges that they are entitled to the fund with interest thereon from the death of Mrs. Michael, either under the power of appointment or under the limitation over in the contract, in case of the non-execution of the power, as may be determined by the Court, and the prayer of the bill is specific and general. In what respect the averment of the bill can be regarded as insufficient, is for the appellant to show.

BOWIE, C. J., delivered the opinion of this Court.

The contract, the true construction and legal effect of which is the subject of the present appeal, was before this Court in the case of *Morey, Ex'tx of Michael, vs. Michael,* 18 *Md. Rep.*, 228, brought up by appeal of the appellee, Caroline, as executrix of Catharine Michael, from a decree dismissing the bill on demurrer.

That suit was presented by her as executrix, and the demurrer overruled by this Court, upon the ground that although the will executed by Mrs. Michael was not a good execution of the power, as to the principal sum covenanted to be paid by Isaac Michael, yet the interest accruing during the coverture, was the sole and separate estate of the wife, which she might bequeath independently of the power.

In the argument of that case, a prominent point on the part of the appellee was, as in this, that the appellant's remedy, if any, was in a Court of Law, and not in equity; that the only object of the bill was to recover a specific sum of money, and interest upon a covenant to pay. In other words, it was a contract for the payment of money to be enforced at law, not a trust resting in confidence, of which equity had cognizance.

It became necessary, therefore, in deciding that point, which went to the jurisdiction of the Court, and which, if

tenable, would have compelled this Court to sustain the demurrer, to examine the character of the instrument exhibited with the bill, (which is the same now exhibited by the appellees with their bill,) and determine the rights of those claiming under it, particularly the relation of the appellee in that case (now the appellant) to the principal fund.

The views of the Court on this point are thus expressed, "The appellee took the legal title to the property under the contract, with limitations against any beneficial use or interest in himself, and a determination of the character of his relation to it will decide the question of jurisdiction presented by the demurrer."

"Although the contract in some respects is inartificially drawn, it is clear that the intent of the parties to it was, to fix upon the appellee a fiduciary possession of the fund assigned, and create a trust by which the purpose of the testatrix as to its beneficial use and ultimate destination would be accomplished." The creation of a trust depends upon intention, and when expressions used manifest an intention that the grantee or donee of property is not to have the beneficial use, but is to hold it for the benefit of another, he will be considered as a trustee holding the legal title for the beneficial owner.

"A gift or grant of property to a grantee or donee, to be applied to a certain use or purpose, fastens a trust on the holding of the legal estate." *Hill on Trustees*, 65. 2 *Ves., Jr.*, 335. 7 *Eng. L. & E. Rep.*, 134. 3 *Md. Rep.*, 505. In this case, we think the appellee took the property assigned by the contract *as a fund*, with the interest as it might or should accrue in the lifetime of the testatrix, encumbered with a trust, and *notwithstanding the form of his obligation in reference to it, relief in equity may be had for any failure or default on his part in its execution.*" 18 *Md. Rep.*, 240, 241.

Although this point may not have been as fully argued in the former case as in the present, yet it cannot be said that the decision just cited was "*obiter dictum*," as the question was directly involved in the issues of law raised by the demurrer to the bill, and the mind of the Court was directly drawn to and distinctly expressed upon the subject.

We consider this construction of the instrument in question conclusive on this point, not because it was made in a suit between the same persons but different parties, but because the point was "investigated with care and considered in its fullest extent," which is all that is necessary in this State to render a decision binding as a precedent. *Alexander vs. Worthington*, 5 *Md. Rep.*, 488, 489.

The jurisdiction of this Court being established, the second point raised by the appellants is, that the appellee, Caroline, is not a *cestui que trust* under the ante-nuptial contract, which should be construed to embrace only a *child* or children of the marriage which the said Catharine might leave at the time of her death.

This construction is based upon the assumption, that there is no allegation in the bill, or evidence in the cause, that Isaac Michael knew his intended wife had any child living at the time of their entering into the contract, and the fact that the ante-nuptial contract does not refer to any such person specifically.

It must be conceded, there is no reference to the fact of a prior marriage on the part of Mrs. Catharine Michael, or of her being a mother, in the agreement referred to, but the bill expressly charges, she was a widow and had an only child of tender years dependent on her, and the answer of the appellant admits the complainant, Caroline, is the child of Catharine by a former marriage, and there was no issue by her second husband. With these facts, it would be a most unnatural as well as forced construction, which

would confine the general terms of an ante-nuptial contract, which are broad enough to include all the children of the covenantee or *cestui que trust*, to those only she might there-after have, and thus exclude the issue of the first marriage from all benefit of the estate of her mother, previously acquired.

The complainant is clearly within the letter as well as the spirit of the contract, as indicated by the circumstances of the contracting parties.    The appellant's answer insists, that Catharine Michael violated all the stipulations of the marriage contract without any cause whatever, which he is advised renders all the covenants and stipulations, to be performed after the death of the said Catharine, utterly null and void, and that he is not, in equity, bound to comply with or perform any of the covenants in said contract not to be performed in the lifetime of the said Catharine. This position is not, in our judgment, sustained by reason or the weight of authority.

Although the articles of agreement between Michael and Baker recite that a marriage is about to be entered into by and between the parties, "and in consideration thereof" the parties agreed to enter into the following covenants and stipulations, it is also recited, "First, the said Catharine Baker, being possessed in her own right of money, etc., to the amount of $4,250, doth transfer, assign and convey the same to the said Isaac Michael," and the said Isaac Michael, in consideration of said sum, "doth covenant and agree to pay, etc., in default of appointment to any child or children she may leave."    It also appears from the said articles, that Catharine Baker owned and occupied a house and lot in Middletown, the rents and profits of which it was agreed she should receive during coverture, for her separate use, with power to sell the same and invest the proceeds as she may direct, for her sole and separate use. And the said Michael covenanted and agreed, that the

said real estate, or any other she might purchase during the coverture, she might bequeath, or the proceeds thereof, and in default of appointment that such real estate shall descend to, and be distributed among, any children she may leave, if more than one ; if only one child, that such child shall receive the whole personal estate and real estate which she, the said Catharine, may leave ; and it was further agreed, that nothing in said articles contained shall debar the said Catharine Baker from any right which she may acquire by virtue of her intermarriage with the said Michael, either in the real or personal estate of said Isaac Michael.

The articles show, that the intended wife was possessed in her own right of both personal and real estate, the right of disposing of which she was determined to secure, notwithstanding her marriage, without surrendering her rights in the real and personal estate of her intended husband.

They further show the real estate and the proceeds thereof, were to descend to, or be distributed among, any children she might leave, and if only one, that child should receive the whole personal estate and real estate that Catharine Baker might leave.

It would be impossible to imagine that terms so clear and comprehensive as these, would not include the only child of her first marriage ; and if they received such construction when applied to the real estate, why adopt a different construction of words nearly identical, when speaking of the personal? It might justly be contended, also, that the words annexed to the covenant relating to the real estate, being subsequent to all others, are broad enough to include, and do include expressly, the whole personal and real estate which Catharine Baker might leave.

The consideration of marriage is a valuable consideration, and not only sustains covenants in favor of the wife

and the issue of the marriage, but also covenants for set-
tlements in favor of children of a former marriage as a
moral consideration. *Cruise, Tit.* 32, *sec.* 752, *Vol.*
*Greenleaf Ed.* The children are regarded as purchasers.
They may enforce the obligations of the contracting par-
ties, notwithstanding the non-performance of mutual stipu-
lations on the other side, unless they are conditional and
dependent covenants.

Although the defaulting party may not, in some instances,
be allowed to enforce the articles specifically, the children,
the innocent objects of parental solicitude and care, are
entitled to all the benefit of the uses under the settlement,
notwithstanding there has been a failure on one side.
*Macqueen on Husband and Wife, sec.* 3, *Title "Ante-nuptial*
*Agreements,"* and cases there cited.

These reasons include as well the issue of a former as a
subsequent marriage. There can be no equity in inflict-
ing upon the only child of a former marriage, dependent
on its mother for support in whose behalf provision was
made in anticipation of a second marriage, the penalty
of forfeiture because of the subsequent misconduct of her
mother.

In the case of *Sydney vs. Sydney*, where the bill was filed
by the wife for specific performance of marriage articles,
and the defence was, she had withdrawn herself from her
husband, lived separately from him and very much mis-
behaved herself, although there was a violent presump-
tion of adultery, the Lord Chancellor TALBOT held, that
"the articles being that the husband shall settle such and
such lands in certainty on his wife for her jointure, this is
pretty much in the nature of an actual and vested jointure ;
in regard to what is covenanted for a good consideration to
be done, is considered in equity as done, consequently this is
a jointure and not forfeitable, either by adultery or elope-
ment, and it was decided that the husband should perform

his marriage articles." 3 *P. Wms.*, 274, 276. *Vide*, also, *Blount vs. Winter, Ibid.*, (*note* 2.) 1 *Ball & Beatty*, 205, *mar. page.*

The cases referred to by the appellant to sustain his defence, are generally cases where the application was on the part of the defaulting party for a settlement out of her separate estate, in the absence of articles of agreement ; in which of course the parties would be remitted to purely equitable rights. Such are the cases cited. 1 *Roper on Husband & Wife*, 275. *Carr vs. Eastbrooke*, 4 *Ves.* 146.

ROPER remarks, "it may be inferred from *Bell & Montgomery*, that though the Court may not make a settlement on the wife when living in adultery, yet it will secure her trust property for the benefit of the survivor or her children." This principle is recognized in many of the cases. There is no pretence here, however, of any misconduct on the part of the wife, greater than the use of intemperate language, and separation from her husband because of unhappy domestic circumstances. There is no ground for any imputation upon her purity as a wife. She maintained reputable associates, notwithstanding her separation.

*Decree below affirmed, with costs to the appellees.*
( Decided January 23rd, 1867.)