# THE UNITED RAILWAYS AND ELECTRIC COM-
# PANY OF BALTIMORE

### *vs.*

## MAYOR AND CITY COUNCIL OF BALTIMORE.

*Obiter dicta. Corporations: amendment of charter; title of stat-
ute; when not sufficient; Constitution, Article 3, section
29. Street paving: railways; between tracks.*

Where the Court of Appeals in deciding a cause declares that,
although, according to its view of the case the decision of a
certain question is not before it and is not essential, but, in
order to prevent further litigation on that score, it proceeds to
dispose of the question, and after a motion for a re-argument,
although it rescinds the decree, yet reaffirms its opinion on the
same question, its ruling upon such question can not be treated
as mere *obiter dicta.*                                p. 558

The titles of Chapter 401 of the Acts of 1906, and of Chapter
202 of the Acts of 1908, describe the statutes as empowering
Baltimore City to create a paving commission, to provide for
submitting to popular vote the question of issuing bonds for
paying the cost of the work of said commission, etc., and as
authorizing the assessment of the whole or part of the cost of
the streets, upon the abutting property owner; besides these ob-
jects, the body of the Act provides that the Railways Com-
pany, on the improved streets, shall repave between their tracks,
etc., with the same character of improved pavement used on such

streets; *held,* that the title of the statutes did not contain such reference to or notice of this provision as to comply with section 29 of Article 3 of the Constitution, and the provision was invalid as to those railway companies, whose charter required them only to repave the pavement between the tracks and for two feet on eiter side.                          pp. 560, 561

If the Legislature has the authority to amend the charters of the Railway Companies so as to require them to repave between their tracks, it must be by an Act whose title gives some reference to such an amendment.               ·        p. 561

*Decided October 7th, 1913.*

Appeal from the Baltimore City Court (BOND, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Edgar H. Gans* and *Joseph C. France,* for the appellant.

*S. S. Field (the City Solicitor),* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

The appeal in this case is from a judgment in favor of the City of Baltimore for the cost of repaving the track area— between the tracks and two feet on each side—of appellant's street railway, on Linden avenue between Dolphin street and North avenue.

The case is in the nature of a test one, and, under agreement of counsel filed in the case, it is admitted that the ultimate liability of the appellant, if the contention of the city should be deemed correct, will exceed the sum of one million

and a half dollars exclusive of the expense of adapting their track conditions to the new plan of paving, and which was admitted in proof would amount to an approximately equal sum. It is therefore seen that the case, in a monetary sense, is an important one to both parties.

By ordinance of the Mayor and City Council, No. 153, approved August 16, 1912, passed in pursuance of the Act of 1906, Chapter 401, section 8, it was provided by section 1 thereof as follows: "Be it ordained by the Mayor and City Council of Baltimore that there is hereby imposed upon all street railway companies occupying with their tracks parts of the beds of streets, avenues or other highways in the City of Baltimore upon which work shall have been done or shall hereafter be done under the Act of 1906, Chapter 401 of the General Assembly of Maryland, and any amendment or amendments thereof, the obligation to pay for said work so far as the same shall have been done or shall be done between the rails of their said tracks, and for a space of two feet on either side thereof."

The Act of 1906, Chapter 401, mentioned in the above ordinance, was the Act providing for the appointment of a Paving Commission for Baltimore, and authorizing the borrowing of five million dollars for the purposes of the work contemplated by the city in the matter of improved paving. Section 8, which is the only section involved in this appeal, is as follows:

"SEC. 8. *And be it further enacted,* That the Mayor and City Council of Baltimore be and it is hereby likewise authorized to impose upon all street railway companies occupying with their tracks parts of the beds of the streets, avenues or other highways in the City of Baltimore upon which work should be done under this Act, of the obligation to pay for said work so far as the same shall be done between the rails of their said tracks, and for a space of two feet on either side thereof, and the Mayor and City Council of Baltimore is further authorized to enforce said obligation

by all such appropriate agencies, means, processes, pro-
ceedings and remedies as it may ordain for the pur-
pose; but nothing in this Act shall be taken as in any
wise relieving any such company or any other corpora-
tion or person from any obligation in its or his rela-
tions to the public highways of the City of Baltimore
now cast upon it or him by law."

The original tracks on Linden avenue between Dolphin
and McMechen streets were laid by the Baltimore, Peabody
Heights and Waverly Passenger Railway Co., a corporation
incorporated by Act of 1872, Chapter 369. The tracks were
laid under authority of Ordinance No. 36, approved April
28th, 1879. The name of this company by Act of 1880,
Chapter 488, was changed to North Baltimore Passenger
Railway Company. The tracks from McMechen street to
North avenue were laid by the said North Baltimore Pas-
senger Railway Company under authority of Ordinance No.
54, approved April 21, 1881. The original charter provided
that it should have the power to lay its tracks on such streets
and under such terms as might be designated by ordinance,
and further as to all matters not therein provided for, its
rights should be the same as provided in the charter of the
Baltimore City Passenger Railway Company. One of the
sections of that charter not expressly provided for in the
Peabody Heights charter is, "that the General Assembly
hereby expressly reserves the power at all times to repeal,
alter or amend this charter."

The appellant company succeeded to, and now has, all the
rights and obligations of the company which laid the tracks,
including the duty provided by ordinance by virtue of charter
provisions, to "keep the streets covered by said tracks, and
extending two feet from the outer limits on either side of
said track, in thorough repair at their own expense."

Prior to 1897, the obligation to both repair and repave
was assumed by a few of the companies, but on the 9th day

of December of that year, an ordinance was approved, whereby it was provided that all street railways to which thereafter the right of using the streets should be granted, should not only maintain the track area, but should pay the cost of new and improved pavements, whenever an ordinance should be passed providing for the paving or repaving of streets used by them. In all instances coming under these provisions, the appellant makes no contention, but confines its opposition to the operation of the Acts and ordinance to those companies occupying streets before 1897 and whose obligation was confined to repair only.

The city's contention is that by reasonable construction the obligation in the original ordinances to keep the track area in repair, means that the railway company shall keep the area in repair and proper condition to correspond with the rest of the street. In other words, that the true meaning is, that it is not only to actually keep it in repair, as that term is usually used, but that the term also embraces the duty to repave with any material the city sees proper to place on the rest of the street. If the city wishes to take up a cobblestone street and lay in its place an improved character of street, such as asphalt or Belgian blocks, that under the contract to keep in repair the railway must take up the cobbles in the track area and put down the asphalt or Belgian blocks. And the city further contends that even though the obligation to repair imposed by the original ordinances does not compel the railway company to pay for the cost of repaving, that still the Legislature had the power to impose upon the appellant occupying the streets, the obligation to repave, in addition to the original obligation to repair only. The contention is made that section 8 of the Act of 1906, Chapter 401, and the ordinance passed in pursuance thereof, should be sustained, either as a valid exercise of the police power, or of the reserved power of the Legislature to alter, repeal or amend the charter of the railway companies which originally

laid the tracks on Linden avenue, and to whose rights and obligations the appellant succeeded.

The case was tried before the Court, without a jury, and the exceptions reserved were upon the action of the Court in striking out certain testimony, and the refusal to rule as a matter of law, in separate prayers, that there was no evidence legally sufficient to entitle the plaintiff to recover; that section 8 of Chapter 401 of the Acts of 1906 and Ordinance No. 153 of the Mayor and City Council are invalid as being in conflict with the Federal Constitution: (1), in denying the equal protection of the law; (2), prohibiting the taking of property without due process of law; and (3), prohibiting the impairment of contracts.

Of course, the appellant contends that the obligation to keep in repair does not include repaving, but the only other contentions now made are that the Legislature never intended the construction that is now contended for by the city; that if it did, it had not the power, because such construction is an impairment of its contract and that the Act is invalid because it is not in conformity with section 29 of Article 3 of the State Constitution.

With regard to the claim of the city, that the obligation, imposed upon the railway by the original ordinances, to keep the track area in repair, includes the duty to repave with new material, whenever the city, in its progress, paves the balance of the street with improved paving, we would say that we deem it unnecessary to enter into any extended discussion of this question. Although the authorities cited and the reasoning in behalf of this contention are both of much force, there are authorities of equal weight to the contrary. In fact, in this State that question has been passed upon by this Court in *Baltimore* v. *Scharf,* 54 Md. 499, and decided contrary to the city's contention.

In that case a property owner was asking to have the authorities of Baltimore restrained from collecting certain taxes, assessed against him for repaving the entire width of

a street, by virtue of an ordinance. The claim, among others, was made that the ordinance was void because it did not make a railway company, occupying the street in controversy with tracks, pay any portion of the costs, whereas its charter and an ordinance bound it "to keep the streets occupied by its tracks, and two feet on each side of its track, in thorough repair." The Court said: "The objection that the obligation to repair is on the railway by the express terms of its charter, interposes no sufficient reason to avoid the ordinance. Their obligation is to keep in repair, not to repave with a new and different material and perhaps more costly. The obligation to repair the *new pavement* whenever necessary would attach under the charter obligations, unless sufficient reasons could be found to relieve them."

The city contends that this was *obiter,* but with this we cannot agree. It is true that the decision of this point was rendered unnecessary because the case was decided upon another point—the lack of notice. Yet the Court before passing upon the question said that although the decision was rendered unnecessary, "but as it may prevent further litigation on that score we may properly dispose of the questions," and proceeded to do so. The decree in this case upon reargument was afterwards rescinded, *Baltimore* v. *Scharf,* 56 Md. 50, but the opinion on this point was reaffirmed. This then clearly takes it out of the domain of *obiter* and will be regarded by us as a question to which the judicial mind was directed. And although we are impressed with the reasoning we nevertheless see no reason to depart from the ruling of our predecessors. We are, therefore, of the opinion that upon a proper construction of the obligation to repair imposed by the original ordinances the appellant is not liable for the cost of repaving.

Can then under the Act of 1906, Chapter 401, and the amendment thereto and the ordinance passed in pursuance thereof, the appellant be made to bear the cost of the repaving in addition to the repairing obligation?

From the conclusion we have reached, we have not found it necessary to consider any of the questions raised other than whether the Acts of 1906, Chapter 401, and 1908, Chapter 202, and the titles thereto are comprehensive enough to carry with them a modification of the charter provisions of the appellant. And therefore, we are not expressing any opinion as to whether or not it was in the power of the Legislature to impose the duty upon the appellant of repaving the track area in addition to that of repairing previously imposed.

At the passage of the Acts, the rights and duties of the appellant were well defined. If the city's contention is correct that by section 8 of Chapter 401 of the Acts of 1906, the Legislature intended to empower the Mayor and City Council to impose upon all railway companies using the streets of the city, the costs of repaving the track area, irrespective of whether or not their charters required them to repair and repave, or only to repair; and, in addition, if it is correct that the Acts and ordinance are a valid exercise, either of the police power, or of the reserved power of the Legislature to alter, repeal or amend the charter of the appellant, then, there was the attempt to make a vital change in the charter of the appellant. But that such was not the intention of the Legislature we think is proved by the Acts themselves.

The title to Chapter 401, Acts of 1906, is as follows: "An Act to create a Paving Commission for the City of Baltimore, and to define its duties and powers; to authorize the Mayor and City Council of Baltimore to issue stock to an amount not exceeding five million ($5,000,000) dollars for the purpose of defraying the cost of the work of said Commission; to provide for the submission of an ordinance to that end to the legal voters of the City of Baltimore; and to empower the Mayor and City Council of Baltimore to assess the cost of any work of said Commission, in part, upon the property bordering upon any public lane, alley, avenue, street or high-

way in the City of Baltimore, upon which such work shall be done by said Commission, and to collect and make use of such assessments for the purposes of this Act."

The title to Chapter 202 of the Acts of 1908, which was an amendment of Chapter 401, Acts of 1906, is as follows: "An Act to repeal section 7, and to repeal and re-enact with amendments, sections 2, 3 and 6 of Chapter 401 of the Acts of the General Assembly of Maryland for the year 1906, relating to the creation of a Paving Commission for the City of Baltimore, and defining its duties and powers; and authorizing the Mayor and City Council of Baltimore to issue stock to an amount not exceeding five million dollars ($5,000,000) for the purpose of defraying the cost of said work of said Commission."

The prior Act, section 7, imposed one-third of the cost upon the city and two-thirds upon the abutting property owners. The amendment provided, section 2, that the Commission could assess the entire cost upon the abutting property. Section 3 authorizes and provides the method by which the Mayor and Council may acquire private property rights, etc., that may exist in the highways. Section 6 deals with the five million dollar stock issue.

The construction claimed for by the city, if allowed, would permit of the amendment of the appellant's charter, which it had enjoyed for more than thirty years, by an Act whose title gave not the slightest intimation of such intention. Two years later, and before any action whatever had been taken upon the prior Act, an amending Act was passed by the Legislature, in the title to which there is not only no reference to anything which might affect the appellant, but in the body of which there is the plainest inference to be drawn that the abutting property owners were to be assessed for the entire cost. If the true construction of section 8 of Chapter 401, Acts of 1906, should be that its provisions apply to companies in the category of the appellant, as well as those granted the right to the use of the streets subsequently to December 9th,

1897, and those companies under the obligation to repave as well as repair, then the title to the Act should have contained some reference so as to have given some notice to those in like position to the appellant that their charters were about to be amended.   If the constitutional provision contained in section 29 of Article 3 is to be of any weight at all, and this Court has many times declared it to be of the most importance, it is difficult to see how any corporation could claim the benefit of this constitutional requirement, if we should permit this appellant's charter to be amended by these Acts whose titles contain not the slightest reference either directly, or indirectly, to it or those in a like class to it.   If the intention was to amend the charter, the appellant had the right to constructive notice at least, so as to have had an opportunity to be heard if it wished, or to have taken any other action it should have seen fit.

Our conclusion is that this section 8 is not invalid but that it does not apply to those companies upon which the obligation to repair only existed.

We are of the opinion that the prayer of the appellant, asking the Court to rule as a matter of law that there was no legally sufficient evidence to entitle the appellee to recover, and that the verdict for the appellant should have been granted.

*Judgment reversed without a new trial,*
*costs to be paid by the appellee.*