# MARTIN FRANCIS SCOTT v. STATE OF MARYLAND

[No. 116, September Term, 1981 and
No. 75, September Term, 1982.]

*Decided September 19, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*George E. Burns, Jr.,* and *John L. Kopolow, Assistant Public Defenders,* with whom were *Alan H. Murrell, Public*

*Defender,* and *Julia D. Haskins, Assistant Public Defender,* on the brief, for appellant.

*Jillyn K. Schulze, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court. MURPHY, C. J., and SMITH and RODOWSKY, JJ., dissent. MURPHY, C. J., filed a dissenting opinion at page 253 *infra,* in which SMITH and RODOWSKY, JJ., join.

On 1 October 1981, in the Criminal Court of Baltimore (now the Circuit Court for Baltimore City), a jury convicted the appellant, Martin Francis Scott (accused), insofar as here relevant, of premeditated murder. After the jury determined that the appropriate sentence was death, the trial court imposed the death penalty. This appeal followed.

On appeal, the accused does not contend that the trial court committed error during the guilt phase of the trial. The accused asserts, however, that the trial court committed numerous prejudicial errors in the course of the sentencing proceeding. More particularly, he asserts that the trial court improperly admitted certain evidence intended to show that the accused had committed two unrelated murders with which he had been charged but for which there had been no conviction.[1] Because we find that the trial court committed prejudicial error by admitting that evidence, we shall vacate the death sentence and remand the case for a new sentencing proceeding. Under these circumstances, no other questions need be considered.

· Here the record shows that at the conclusion of the guilt phase of the trial, the accused was convicted of the premeditated murder of Glenn Harrod, a cashier at a McDonald's Restaurant, a crime committed on 25 November 1980 during the course of an armed robbery. At the

---

1. Throughout this opinion, the word "conviction" includes a conviction, a plea of guilty, or a plea of nolo contendere, unless otherwise indicated

sentencing proceeding, in his opening statement, the State's Attorney said:

"[T]he State openly admit[s] that there is a mitigating circumstance in this case. . . . [W]e are admitting . . . that Martin Scott has not previously been convicted of a crime of violence."

Thus, the State conceded that the accused had not previously been convicted of a crime of violence.

The State then proffered evidence to show that on 12 November 1980, during the course of an armed robbery, the accused killed John Hiotis, the owner of the Gyros Restaurant, and that on 26 November 1980, during the course of an armed robbery, the accused killed Jung Ju So, an employee of the Shurefine Market. The accused objected to the admission of the proffered evidence. After hearing testimony out of the presence of the jury relating to the two unrelated murders, the trial court determined that the evidence was "relevant and probative" and that the "evidence of the [accused's] conduct in those [two unrelated murders] establishes his participation beyond any reasonable doubt." The trial court concluded that even though there was no conviction, the evidence was admissible under Maryland Code (1957, 1982 Repl. Vol.), Art. 27, § 413 (c) (1) (v).

Thereafter, both direct and circumstantial evidence was presented to the jury to show that the accused had committed the two unrelated murders. With respect to the 12 November murder of Hiotis, the evidence consisted of the testimony of an eyewitness who made a positive in-court identification of the accused and the testimony of a psychiatrist, a psychologist, and a friend, to each of whom the accused had confessed. With respect to the 26 November murder of Jung Ju So, the evidence consisted of the testimony of two eyewitnesses, each of whom made positive in-court identifications of the accused, the testimony of a psychologist to whom the accused had confessed, and the testimony of a fingerprint expert that the accused's fingerprint was found at the scene of the crime. In addition,

evidence relating to the accused's background, character, and mental state at the time of the Harrod murder was adduced.

After the accused completed closing argument, the State, in closing argument, emphasized the significance of the two unrelated murders. More particularly, the State said in pertinent part:

> "What is more important than the mitigating circumstance, if any, which you find ... *why it's the two other murders.* . . . Because what you do is this: Here's how you do it.
>
> . . .
>
> "You first decide if there's an aggravating circumstance beyond a reasonable doubt to a moral certainty. Then you find if there's any mitigating circumstances to the standard of preponderance of the evidence. The tipping of the scale, and then against any and all mitigating circumstances you find, you *balance the other two murders.*
>
> . . .
>
> "Now, what could be more of a proper thing to take into consideration in balancing against any and all mitigating circumstances than the fact Mr. Scott *killed two fellow human beings in cold blood?*
>
> . . .
>
> "If they had all eight mitigating circumstances and you balance that against the facts that the [accused] *committed two other murders,* if you find that it is relevant and probative to consider that fact, then you lump that all together, and you analyze that in your mind. You say, okay. He's got number 8, number 1, number 4, and let's see, he killed two other people. All right. In my mind *the mitigating circumstances aren't worth anything* because how important can it be that he was perhaps substantially impaired, which is only one

factor. It's not that he's guilty or innocent. It's not life or death if a mitigating circumstance exists. *You could have every single mitigating circumstance. You could balance that with two other murders.*

"Then you'd say, okay. I weigh that all together. Just to give you some kind of an idea, let's say my one aggravating circumstance is worth a hundred points or any figure you want to use. Now, we have given them three mitigating circumstances. They add up to a hundred points, but *when I think about he killed two other people, good God! What's more important?*

"*That wipes out all of the mitigating circumstances. They are not worth a hill of beans. They are worth nothing even though I find they exist. They are of no consequence compared to the two other murders,* and when you balance that result against the one aggravating circumstance, I wouldn't care if he had all eight.

. . .

You have heard the testimony of *the other two murders. We say other two murders.* You all have heard the testimony. You know *there's two people who are dead* besides Glen Harrod. They are just not *two other murders.* They are two other people.

. . .

They are dead. They are dead. You don't know what their trials were, what their upbringings were like, what they had to go through, what they left behind, who mourns for them, who grieves for them, who misses them. People that have nightmares over their deaths.

. . .

You just don't know about those people because the

person on trial is the person who gets the focus of all your attention. Meanwhile, these people are snuffed out like you would step on a match that was burning your finger. They are just going. You just don't know about them, and we sit there and talk about *murders.*

"These are people. These are real, live people who were absolute innocents. They were innocents. They were innocent persons who died.

. . .

"They are dead.

. . .

"That's what I mean when I say to you *two murders.* What does it mean to you? What are we here for? This is a murder case. These people are gone. You didn't kill them. He did (indicating.)

"What does that mean to you? When is outrage appropriate if not in a situation like this?

. . .

"You must stand up. You must be heard from. You must tell people. You must tell everyone that no, you can't bring back *John Hiotis,* you can't bring back *Glenn Harrod.* You can't bring back *Jung Ju So.*

. . .

We ask you to do your duty in this case. To speak for your fellow citizens and say when somebody goes out and *slaughters three other living human beings,* we want something done about it. We are outraged. We want to scream and shout. We want to tell people we won't stand it any more." (Emphasis added).

At the conclusion of closing argument, after instructing the jury with respect to aggravating and mitigating circumstances, the trial court further instructed the jury in pertinent part as follows:

"Now, let me point out or say that the State has introduced evidence of two other murders and armed robberies, one at Gyros Carry-Out and the other at the Shurefine Market for which the [accused] had been charged but with respect to which he has not yet been tried.

. . .

If you find that the evidence of the other untried crimes is relevant and probative, you should not use it in determining the existence of an aggravating circumstance beyond a reasonable doubt or the existence of mitigating circumstances by preponderance of the evidence. *Rather, it may be considered by you as bearing on the character of the [accused] in your assessment of the weight to be given to mitigating circumstances in the final balancing process.*

. . .

"Let me further point out with respect to section three, in balancing the various factors, you are not involved in a mere counting process. The number of aggravating and mitigating circumstances you find to have been proved is not necessarily determinative in this balancing process. Rather, you should decide what weight and quality each factor deserves and apply your reasoned judgment as to whether this situation calls for life imprisonment or whether it requires an imposition of death in light of the balancing of the aggravating circumstances and mitigating circumstances which you find to have been proved."

On 5 November 1981, the jury found only one aggravating circumstance — that the accused had "committed the [Harrod] murder while committing or attempting to commit robbery." The jury found two mitigating circumstances — first, that the accused "previously . . . has not been found

guilty of a crime of violence," and second, that "[t]he murder was committed while the [accused's mental] capacity . . . was substantially impaired. . . ." The jury then found that the mitigating circumstances did not outweigh the aggravating circumstance, and determined that the accused should be sentenced to death. On 6 November 1981, the trial court imposed the death sentence.

This case presents the question whether, under Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 413 (c) (1), evidence is admissible at a sentencing proceeding to show that an accused convicted of premeditated murder has committed other unrelated crimes for which the accused has not been convicted or pleaded guilty or nolo contendere. Section 413 (c) (1) provides:

> "*The following type of evidence is admissible in this proceeding:*
>
> "(i) *Evidence relating to any mitigating circumstance listed in subsection (g);* [2]
>
> "(ii) Evidence relating to any aggravating circumstance listed in subsection (d) of which the State had notified the defendant pursuant to § 412 (b);
>
> "(iii) *Evidence of any prior criminal convictions, pleas of guilty or nolo contendere,* or the absence of such prior convictions or pleas, to the same extent admissible in other sentencing procedures;
>
> "(iv) Any presentence investigation report. However, any recommendation as to sentence contained in the report is not admissible; and

---

**2.** Art. 27, § 413 (g) provides in pertinent part:

"[T]he court or jury . . . shall . . . consider whether, based upon a preponderance of the evidence, any of the following mitigating circumstances exist: .

"(1) The defendant has not previously (i) been found guilty of a crime of violence; (ii) entered a plea of guilty or nolo contendere to a charge of a crime of violence; or (iii) had a judgment of probation on stay of entry of judgment entered on a charge of a crime of violence."

"(v) *Any other evidence* that the court deems of probative value and relevant to sentence, provided the defendant is accorded a fair opportunity to rebut any statements." (Emphasis added).

The accused contends that under § 413 (c) (1) (i) and § 413 (c) (1) (iii), admissible evidence of unrelated crimes is restricted to evidence of prior convictions, pleas of guilty or pleas of nolo contendere. The accused maintains that consequently the evidence of the two unrelated murders was inadmissible here because, although charged with both, the accused had not been convicted of either. The State, relying upon *Johnson v. State,* 292 Md. 405, 439 A.2d 542 (1982), contends that the evidence was admissible under § 413 (c) (1) (v).

In *Johnson,* this Court considered the question whether, under § 413 (c) (1) (v), evidence is admissible at a sentencing proceeding to show that an accused, convicted of premeditated murder, has committed other unrelated crimes for which the accused has not been convicted. There, a jury convicted Johnson of first degree murder. At the sentencing proceeding, the trial court, over Johnson's objection, permitted the State to read to the jury Johnson's explicit confession to an unrelated murder with which Johnson had been charged, but of which he had not been convicted. In dicta, a majority of this Court said:

"*[E]vidence of criminal conduct for which a defendant has not been convicted is clearly admissible for sentencing purposes when that task is performed by a judge in a case not involving a section 413 death penalty proceeding. Logan v. State,* 289 Md. 460, 480-87, 425 A.2d 632, 642-46 (1981); *Purnell v. State,* 241 Md. 582, 217 A.2d 298 (1965). We only a few months ago stated in *Logan v. State* that:

'[i]n considering what is proper punishment, it is now well-settled in this State that a judge is not limited to reviewing past conduct whose occurrence has been judicially established, but may view "reliable evidence of conduct which

may be opprobrious although not criminal, as well as details and circumstances of criminal conduct for which the person has not been tried...." [*Logan v. State, supra,* 289 Md. at 481, 425 A.2d at 643 (citations omitted).]'

"*There is no reason in principle why this concept of sentencing should not apply in a section 413 death penalty proceeding* even though the sentencing authority can, by election of the defendant, be reposed in either judge or jury. We observe nothing in the enactment which in any way contradicts this view, and in fact, a fair reading of the statute, particularly section 413 (c), embraces it.

. . .

*In our view, part (v) in unambiguous terms authorizes the trial court to admit into evidence before the sentencing jury identical information concerning a defendant's criminal conduct as would normally be considered by the judge if he were imposing sentence in a non-death penalty case.* As is true in all other criminal causes, the sentencing authority in a death penalty case should be presented with a full range of relevant information so. as to fashion a particular penalty in accord with 'the prevalent modern penal philosophy of individualized punishment.' *Logan v. State, supra,* 289 Md. at 481, 425 A.2d at 643. The task that the sentencer must perform in this regard is thus basically no different from that carried out daily by trial judges in other types of cases. Therefore, evidence of a convicted person's confession to prior criminal conduct, voluntarily made, may be admitted at sentencing pursuant to section 413 (c) (1) (v) if the court deems it to be of probative value and relevant to sentence, 'provided the defendant is accorded a fair opportunity to rebut any statements' and challenge their voluntariness." *Johnson,* 292 Md. at 441-43, 439 A.2d at 562-63 (emphasis added).

Thus, this Court indicated that under § 413 (c) (1) (v) under certain circumstances certain evidence of unrelated crimes of which the accused has not been convicted is admissible in a sentencing proceeding in a death penalty case.

*Johnson,* however, is not dispositive here. In *Johnson,* the accused's sole contention was that evidence of an unrelated murder with which he had been charged but for which he had not been convicted was inadmissible because it " 'was unrelated to any aggravating factor' contained in the statute, and, moreover, rebutted nothing" with respect to any mitigating circumstance. *Johnson,* 292 Md. at 441, 439 A.2d at 562. The accused, however, did not there contend that under § 413 (c) (1) (i) and § 413 (c) (1) (iii) admissible evidence of unrelated crimes was restricted to evidence of prior convictions, pleas of guilty or pleas of nolo contendere and consequently that the evidence of the unrelated murder was inadmissible because, although charged with the murder, the accused had not been convicted. Thus, while in *Johnson,* this Court considered the scope of § 413 (c) (1) (v), it did so without considering the questions of the scope of § 413 (c) (1) (i) and of § 413 (c) (1) (iii) and their interrelationship with § 413 (c) (1) (v). Those questions will be considered here.

The cardinal rule of statutory construction is to ascertain the actual intent of the Legislature. The primary source from which to determine the intention of the Legislature is the language of the statute itself. In determining whether the meaning of a statute is ambiguous, it is not proper to confine interpretation to the isolated section to be construed. Rather, in determining the meaning of a particular provision or section, even where its language appears to be clear and unambiguous, it is necessary to examine that provision or section in context. If the statutory language of the particular provision or section in its context is ambiguous, the statute must be examined as a whole and the interrelationship or connection between all of its parts considered. The statute should then be construed so that all of its parts are given effect and harmonized if possible, and should not be construed so as to render any language sur-

plusage or meaningless. Moreover, if the statutory language is ambiguous, the statute is to be construed reasonably and with reference to the purpose to be accomplished. In order to determine the statute's purpose, a court may consider the statute's legislative history. *Haskell v. Carey,* 294 Md. 550, 556, 451 A.2d 658, 662 (1982); *State v. Loscomb,* 291 Md. 424, 429, 435 A.2d 764, 767 (1981); *Comptroller of the Treasury v. John C. Louis Co.,* 285 Md. 527, 538, 404 A.2d 1045, 1052 (1979); *Employment Sec. Admin. v. Weimer,* 285 Md. 96, 103, 400 A.2d 1101, 1105 (1979).

Section 413 (c) (1) establishes a statutory scheme designed to delineate and circumscribe the type of evidence admissible in sentencing proceedings in death penalty cases. Thus, § 413 (c) (1) (i) provides that certain evidence relating to mitigating circumstances is admissible; § 413 (c) (1) (ii) provides that under certain circumstances certain evidence relating to aggravating circumstances is admissible; § 413 (c) (1) (iii) provides that three types of evidence relating to other crimes allegedly committed by an accused are admissible; and § 413 (c) (1) (iv) provides that presentence investigation reports are admissible, but specifically precludes recommendations as to sentence. The language of all of these provisions collectively unambiguously restricts the type of evidence admissible in a sentencing proceeding in a death penalty case to something less inclusive than what generally is admissible in a sentencing proceeding in a nondeath penalty case.

More particularly, § 413 (c) (1) (i) provides that evidence relating to any mitigating circumstances listed in § 413 (g) is admissible. Article 27, § 413 (g) (1) specifically enumerates as a mitigating circumstance the fact that:

> "The defendant has not previously (i) been found guilty of a crime of violence; (ii) entered a plea of guilty or nolo contendere to a charge of a crime of violence; or (iii) had a judgment of probation on stay of entry of judgment entered on a charge of a crime of violence."

This specific enumeration restricts the type of evidence relating to other crimes that is admissible to evidence of crimes of violence for which there has been a conviction. Thus, § 413 (c) (1) (i) establishes a more stringent standard of relevance for the admission of evidence relating to other crimes in a death penalty case than is applied in a nondeath penalty case. That section establishes that a lack of a conviction of a crime of violence is a mitigating circumstance to be taken into account and given some weight. It precludes, in a death penalty case, the admission of evidence of crimes of violence for which there have been no convictions, evidence that may well result in the mitigating circumstance of the absence of prior convictions being outweighed or, in essence, "wiped out" or eliminated. As a result, § 413 (c) (1) (i) serves the purpose of moderating the significantly prejudicial nature of evidence of unrelated crimes in the face of the unique severity of the death penalty.

Additionally, § 413 (c) (1) (iii) provides that three types of evidence relating to other crimes allegedly committed by an accused — evidence of convictions, pleas of guilty, and pleas of nolo contendere — are admissible in a sentencing proceeding in a death penalty case. This specific enumeration restricts the type of evidence relating to other crimes that is admissible to evidence of crimes for which there has been a conviction. Thus, § 413 (c) (1) (iii) establishes a more stringent standard of reliability for the admission of such evidence in a death penalty case than is applied in a nondeath penalty case. It precludes, in a death penalty case, any but the most reliable type of evidence of unrelated crimes — a conviction. Additionally, § 413 (c) (1) (iii) precludes, in a death penalty case, inflammatory detailed evidence of the underlying facts and circumstances surrounding unrelated crimes. As a result, § 413 (c) (1) (iii), like § 413 (c) (1) (i), serves the purpose of moderating the significantly prejudicial nature of evidence of unrelated crimes in the face of the unique severity of the death penalty.

The language of § 413 (c) (1) (v), providing that under certain circumstances "any other evidence" is admissible,

cannot be construed as authorizing evidence of unrelated crimes to be admitted in a death penalty case, even where there has been no conviction or plea of guilty or nolo contendere. Such a construction would render the unambiguous language of § 413 (c) (1) (i), establishing that a lack of a conviction of a crime of violence is a mitigating circumstance to be taken into account and given some weight, surplusage or meaningless. Because the admission of evidence of crimes for which there have been no convictions may well result in the mitigating circumstance of the absence of prior convictions being outweighed or, in essence, "wiped out" or eliminated, its admission is not consonant with, and indeed defeats the restrictive purpose of § 413 (c) (1) (i). Moreover, if the phrase "any other evidence" contained in § 413 (c) (1) (v) authorizes evidence of unrelated crimes to be admitted, even though there has been no conviction or plea of guilty or nolo contendere, then the unambiguous language of § 413 (c) (1) (iii), restricting the type of evidence of other crimes to convictions and pleas of guilty or nolo contendere, would be surplusage or meaningless. Manifestly, the admission of evidence of crimes of which there have been no convictions is antithetical to the restrictive purpose of § 413 (c) (1).

If all parts of § 413 (c) (1) are to be given effect and harmonized and no part is to be rendered surplusage or meaningless, § 413 (c) (1) (v) must be read in conjunction with § 413 (c) (1) (i) and § 413 (c) (1) (iii). When read as a whole, § 413 (c) (1) must be construed as precluding the admission of evidence relating to other crimes for which there has not been a conviction or a plea of guilty or nolo contendere.

Such a construction is consonant with the legislative history of the Act. The language of § 413 (c) (1) had its origin in, and was virtually identical in pertinent part to, H.B. No. 785, introduced 26 January 1977, and S.B. No. 374, introduced 25 January 1977. These administration bills were proposed for the purpose of repealing then existing statutes that had mandated that the death penalty be imposed upon

conviction of certain crimes, providing that the punishment for conviction of first degree murder should be life imprisonment or capital punishment, and requiring a separate sentencing proceeding upon conviction of first degree murder. Additionally, the purpose clause of each of these bills expressly stated that one of their purposes was "providing for the evidentiary character of the sentencing proceeding [in a death penalty case]."

This portion of the purpose clause, when coupled with the unambiguous language of § 413 (c) (1) (i)-(iv) restricting the type of evidence admissible in a sentencing proceeding in a death penalty case, establishes that these two bills were intended to provide a sentencing proceeding in which the type of admissible evidence was more circumscribed than in a nondeath penalty case. The restrictive purpose is exemplified in the legislative history of § 413 (c) (1) (i) and § 413 (g) (1). The scope of those sections relating to mitigating factors, as drafted, was specifically addressed in a memorandum dated 11 August 1976 to the Governor's Chief Legislative Officer. There, it was said:

> "There were several alternatives available with respect to the lack of any past criminal record as a mitigating factor. The factor recommended by the Model Penal Code and enacted in Florida is 'no significant history of prior criminal activity.' The draft incorporates a more specific factor of lack of culpable participation in a 'crime of violence.' The fact that a defendant has a 'significant' history of convictions for shoplifting should not have a bearing on the decision by a jury, or judge, to recommend a sentence of death. Therefore, *the draft limits the type of past criminal activity to that which is relevant to the decision in a murder case.*" (Citations omitted.)

Thus, the purpose of the draft of § 413 (c) (1) (i) was to impose a more stringent standard of relevance for the admission of evidence relating to other crimes in a death

penalty case than is applied in a nondeath penalty case by restricting the type of evidence relating to other crimes that was admissible to evidence of crimes of violence.

The draft additionally incorporated another specific factor of lack of culpable participation. Not only did the unrelated crime have to be a crime of violence, but it also had to be a crime of which the accused had been convicted. Thus, the purpose of the draft of § 413 (c) (1) (i) was to restrict the type of evidence relating to other crimes that was admissible not only to evidence of crimes of violence, but also to crimes of violence for which there had been a conviction. With respect to mitigating factors, evidence of an unrelated crime of violence for which there was no conviction was irrelevant and inadmissible.

The question whether the type of evidence admissible in a sentencing proceeding in a death penalty case should be more circumscribed than in a nondeath penalty case was squarely presented by the introduction of S.B. No. 106 on 12 January 1977. Unlike H.B. No. 785 and S.B. No. 374, the purpose clause of S.B. No. 106 contained no reference to "providing for the evidentiary character of the sentencing proceeding" in a death penalty case. Moreover, § 413 (b) of S.B. No. 106 provided in pertinent part:

> "In the proceeding, evidence may be presented as to *any matter that the court deems relevant to sentence,* and may include matters relating to any of the aggravating or mitigating circumstances enumerated in this section."

Thus, the purpose of this portion of § 413 (b) of S.B. No. 106 was to provide a sentencing proceeding in a death penalty case in which the type of evidence admissible would be unrestricted and identical to that generally admissible in a sentencing proceeding in a nondeath penalty case.

The General Assembly rejected H.B. No. 785 and S.B. No. 374, and enacted S.B. No. 106, effective 1 July 1977. On 26 May 1977, S.B. No. 106 was vetoed by the Governor. The veto, however, was not premised on the fact that under S.B.

No. 106 the type of evidence admissible in a sentencing proceeding in a death penalty case would be unrestricted and identical to that generally admissible in a sentencing proceeding in a nondeath penalty case.

Thereafter, on 11 January 1978, S.B. No. 374, an administration bill, was introduced. That bill, in pertinent part, was virtually identical to H.B. No. 785 and S.B. No. 374 that the General Assembly had rejected in 1977. The restrictive purpose of § 413 (c) (1) (i)-(iv) was again exemplified by an accompanying memorandum dated 14 December 1977 from the Governor's Chief Legislative Officer to the General Assembly that indicated, with respect to mitigating factors, that evidence of an unrelated crime of violence for which there was no conviction was inadmissible. That memorandum stated in pertinent part:

> "There were several alternatives available with respect to the lack of any past criminal record as a mitigating factor. The factor recommended by the Model Penal Code and enacted in Florida is 'no significant history of prior criminal activity.' The draft incorporates a more specific factor of lack of culpable participation in a 'crime of violence.' The fact that a defendant has a 'significant' history of convictions for shoplifting or gambling should not have a bearing on the decision by a jury, or judge, to recommend a sentence of death. Therefore, *the draft limits the type of past criminal activity to that which should be relevant to the decision in a murder case.*"

Thus, the General Assembly was aware that § 413 (c) (1) (i) imposed a more stringent standard of relevance for the admission of evidence relating to other crimes in a death penalty case than is applied in a nondeath penalty case by restricting the type of evidence admissible in a sentencing proceeding in a death penalty case to something less inclusive than what is generally admissible in a nondeath penalty case.

The General Assembly enacted S.B. No. 374, effective 1 July 1978. In so doing, the General Assembly delineated "the evidentiary character of the sentencing proceeding" in a death penalty case as one in which the type of evidence admissible is restricted to something less inclusive than that generally admissible in a sentencing proceeding in a nondeath penalty case. Thus, the statute's legislative history supports the construction of § 413 (c) (1) as precluding the admission of evidence relating to other crimes for which there has not been a conviction, plea of guilty or nolo contendere.

Additionally, such a construction is reasonable and consonant with § 413 (c) (1)'s specific purpose of providing a sentencing proceeding in which, in the face of the unique severity of the death penalty, the type of admissible evidence is more circumscribed than in a nondeath penalty case. It is also consonant with the constraint expressed in *Furman v. Georgia,* 408 U.S. 238, 397, 92 S.Ct. 2726, 2807 (1972) (Burger, C.J., dissenting, joined by Blackmun, Powell and Rehnquist, JJ.) that:

> "[J]uries and judges can no longer be permitted to make the sentencing determination in the same manner they have in the past."

*See Eddings v. Oklahoma,* 455 U.S. 104, 110, 102 S.Ct. 869, 874 (1982).

Here, the State conceded the existence of a mitigating factor — that the accused had not previously been convicted of a crime of violence. Nevertheless, the trial court admitted evidence of two unrelated murders for which there were neither convictions nor pleas of guilty or nolo contendere. Under § 413 (c) (1), this evidence was inadmissible. The admission of this evidence exposed the jury to inflammatory detailed testimony concerning the underlying facts and circumstances surrounding the two unrelated crimes. More important, in light of the State's closing argument and the trial court's instructions, the admission of this evidence may well have resulted in the mitigating circumstance of the

absence of prior convictions being outweighed or, in essence, "wiped out" or eliminated. Because this inadmissible evidence was significantly prejudicial to the accused, its admission constituted reversible error. Courts in some jurisdictions that have considered similar questions under varying circumstances and for varying reasons have reached the same result. *E.g., Cook v. State,* 369 So.2d 1251, 1257 (Ala. 1979); *Perry v. State,* 395 So.2d 170, 174 (Fla. 1980); *State v. McCormick,* 272 Ind. 272, 278, 397 N.E.2d 276, 280 (1979). *But see, e.g., People v. Easley,* 33 Cal.3d 65, 87, 654 P.2d 1272, 1288, 187 Cal.Rptr. 745, 760-61 (1982); *Commonwealth v. Hoss,* 445 Pa. 98, 118, 283 A.2d 58, 68-69 (1971); *Milton v. State,* 599 S.W.2d 824, 827 (Tex.Crim. 1980), *cert. denied,* 451 U.S. 1031, 101 S.Ct. 3022 (1981). Under the circumstances here, we shall vacate the death sentence and remand the case for a further sentencing proceeding.

> *Judgment affirmed, except as to the imposition of the death sentence.*
>
> *Death sentence vacated.*
>
> *Case remanded to the Circuit Court for Baltimore City for a new sentencing proceeding.*
>
> *Costs to be paid by Baltimore City.*

*Murphy, C.J., dissenting:*

The Court today adopts a strained interpretation of Maryland's death penalty statute and thereby nullifies the death penalty imposed on Martin Francis Scott by a sentencing jury of his peers. There are at least three reasons why the introduction of Scott's confessions to (and other probative evidence of his participation in) the murders of two other persons was not improper. First, in *Johnson v. State,* 292 Md. 405, 439 A.2d 542 (1982), we decided the precise issue raised here in favor of admissibility, and that case should be accorded controlling precedential significance. Second, the language of the statute is clear and fully supports the admission of this evidence. There is absolutely no

ambiguity in the statute that would justify the Court's futile search for legislative history to support its statutory interpretation. Finally, the evidence was properly admitted to assist the jury in evaluating the force of a concededly mitigating circumstance raised by the appellant, *i.e.*, that he had not previously been convicted of a crime of violence.[1] For these reasons, I most emphatically dissent.

## I.

The Court's decision today flatly contradicts our *Johnson* decision in both letter and spirit. That case extended the established principle in non-capital cases that the sentencer may view reliable evidence of criminal conduct for which a person has not yet been tried:

> "There is no reason in principle why this concept of sentencing should not apply in a section 413 death penalty proceeding even though the sentencing authority can, by election of the defendant, be reposed in either judge or jury. We observe nothing in the enactment which in any way contradicts this view, and in fact, a fair reading of the statute, particularly section 413 (c), embraces it." 292 Md. at 442, 439 A.2d at 563.

Beyond the absence of conflict within the statute itself, positive reasons were given for extending the rule:

> "In our view, part (v) in unambiguous terms authorizes the trial court to admit into evidence before the sentencing jury identical information concerning a defendant's criminal conduct as would normally be considered by the judge if he were imposing sentence in a non-death penalty case. As is true in all other criminal causes, the sentencing

---

1. Another mitigating circumstance upon which such evidence may impact is set forth in § 413 (g) (7), viz, that "[i]t is unlikely that the defendant will engage in further criminal activity that would constitute a continuing threat to society."

authority in a death penalty case should be presented with a full range of relevant information so as to fashion a particular penalty in accord with 'the prevalent modern penal philosophy of individualized punishment.' *Logan v. State,* [289 Md. 460, 481, 425 A.2d 632, 643 (1981)]. The task that the sentencer must perform in this regard is thus basically no different from that carried out daily by trial judges in other types of cases. Therefore, evidence of a convicted person's confession to prior criminal conduct, voluntarily made, may be admitted at sentencing pursuant to section 413 (c) (v) if the court deems it to be of probative value and relevant to sentence, 'provided the defendant is accorded a fair opportunity to rebut any statements' and challenge their voluntariness. Those jurisdictions which have addressed the question here presented are in substantial accord with this view." 292 Md. at 442-43, 439 A.2d at 563.

As we noted in *Johnson,* the Supreme Court has endorsed these principles in *Jurek v. Texas,* 428 U.S. 262, 276, 96 S. Ct. 2950, 2958, 49 L. Ed. 2d 929, 941 (1976) ("What is essential is that the [sentencing] jury [in a death penalty case] have before it all possible relevant information about the individual defendant whose fate it must determine."); [2] and *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S. Ct. 2978, 2991, 49 L. Ed. 2d 944, 961 (1976) ("[I]n capital cases the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.").

---

**2.** *Jurek* is instructive as to the scope of relevant information properly admissible in the sentencing proceeding. In that case, the Supreme Court quoted with approval from the Texas Court of Criminal Appeals opinion to the effect that the jury "could consider the range and severity of [the defendant's] prior criminal conduct" in addition to "whether [he] had a significant criminal record." 428 U.S. at 272-73.

Although the Court notes that the question presented here is virtually identical to that decided in *Johnson*, it does not find that case dispositive, characterizing the discussion of the issue there as "dicta." Such a characterization is misleading at best. Where a point has been raised or argued by the parties, and the court decides the question with a view to settle the law, what is said is not dicta. All that is necessary to render a decision of this Court authoritative on any point decided is to show that there was an application of the judicial mind to the precise question adjudged. *Alexander v. Worthington,* 5 Md. 471, 488-89 (1854). *Accord, McGraw v. Merryman,* 133 Md. 247, 257, 104 A. 540, 543-44 (1918); *Carstairs v. Cochran,* 95 Md. 488, 499-500, 52 A. 601 (1902), *aff'd* 193 U.S. 11 (1904); *Michael v. Morey,* 26 Md. 239, 261 (1867). It does not lessen the authority of the opinion if the case was decided on another ground, *U. Rwys. & E. Co. v. M. & C.C. of Balto.,* 121 Md. 552, 558, 88 A. 617, 620 (1913); *Carstairs v. Cochran, supra,* or if the opinion was for the guidance of the trial court on retrial, as in *Johnson. See State Roads Comm. v. Johnson,* 222 Md. 493, 499, 161 A.2d 444, 448 (1960). It is not necessary for the point to have been directly presented or fully argued in the former case, as long as it was at least indirectly raised or was directly involved in the issues argued. *State Roads Comm. v. Johnson, supra; Michael v. Morey, supra.* Thus, the Court's distinction that the precise formulation of the argument here was not presented in *Johnson* is simply not relevant, since the critical inquiry is whether the issue was raised and decided in the earlier case, not whether argument on the issue covered the same points. In *Johnson,* we held that nothing in the statute (necessarily including § 413 (c) (1) (i) and (iii)) contradicts the position that probative evidence of criminal activity short of criminal conviction may be made available to the sentencing jury. By failing to acknowledge the authority of *Johnson,* the Court avoids the necessity of showing that that case was incorrectly decided. Rather than overruling *Johnson,* the Court simply ignores it and treats the issue as one of first impression. The trial court's careful jury instructions here complied fully with *Johnson* in

directing the proper use of this evidence by the jury. When we have so recently and clearly interpreted a statute, and the interpretation has been relied on by the trial courts of Maryland, it is inappropriate and detrimental to the public perception of the judicial process to engage in such a sudden reversal of position, absent some compelling need not here present.

The Court notes that some jurisdictions considering "similar questions under varying circumstances and for varying reasons" have reached the same result as the majority does here. The Court's qualifying phrases are well advised. Two of the cases relied upon excluded evidence of "pending charges," rather than evidence of confessions and/or eyewitness testimony, as in the present case and in *Johnson. See Cook v. State,* 369 So. 2d 1251 (Ala. 1979); *Perry v. State,* 395 So.2d 170 (Fla. 1980). The remaining case found a constitutional basis for refusing to allow evidence of criminal activity to serve as a statutory aggravating circumstance to support imposition of the death penalty. *See State v. McCormick,* 397 N.E.2d 276 (Ind. 1979) (statutory aggravating circumstance violates Due Process). The Court here does not base its decision on constitutional grounds, nor has the challenged evidence been used to prove the existence of an aggravating circumstance. *Cf. Henry v. Wainwright,* 661 F.2d 56 (5th Cir. 1981). In short, the cases cited by the majority are at best weakly relevant. The support is further undercut and offset by cases holding to the contrary, cases consistent with the result reached in *Johnson. See, e.g., People v. Easley,* 33 Cal.3d 65, 654 P.2d 1272, 187 Cal. Rptr. 745 (1982); *People v. Harris,* 28 Cal.3d 935, 623 P.2d 240, 171 Cal. Rptr. 679, *cert. denied,* 454 U.S. 882 (1981); *Milton v. State,* 599 S.W.2d 824 (Tex. Crim. App. 1980), *cert. denied,* 451 U.S. 1031 (1981); *Wilder v. State,* 583 S.W.2d 349 (Tex. Crim. App. 1979), *vacated on other grounds,* 453 U.S. 902 (1981); *Hammett v. State,* 578 S.W.2d 699 (Tex. Crim. App. 1979) *(en banc). See also United States v. Dalhover,* 96 F.2d 355 (7th Cir.), *cert. denied,* 305 U.S. 632 (1938); *People v. Morse,* 70 Cal.2d 711, 452 P.2d 607, 76 Cal. Rptr. 391 (1969)

(en banc), cert. denied, 397 U.S. 944 (1970); Commonwealth v. Hoss, 445 Pa. 98, 283 A.2d 58 (1971) (pre-Furman cases).

## II.

The Court's disregard for the authority of Johnson would be somewhat mitigated if the result it reached was supported by sound reasoning. It is not. In examining the language of § 413, the Court begins with an unsupported assumption about the purpose of the statute, and then proceeds to use that assumption to interpret the statute in a way that supports the original assumption. The bootstrapping process begins with the assertion that § 413 (c) (1) "establishes a statutory scheme designed to delimit and circumscribe the type of evidence admissible in sentencing proceedings in death penalty cases." After identifying the categories of evidence made admissible by § 413 (c) (1) (i) through (iv), the Court proclaims: "The language of these provisions collectively unambiguously restricts the type of evidence admissible in a sentencing proceeding in a death penalty case to something less inclusive than what generally is admissible in a sentencing proceeding in a nondeath penalty case." The obvious flaw in the Court's reasoning is that this analysis excludes § 413 (c) (1) (v), the very provision at issue here. By dismembering the statute and ignoring the provision nominally being construed, the Court finds that § 413 (c) (1) strictly limits admissible evidence to narrow, enumerated categories. Therefore, since (1) § 413 (c) (1) (i) makes evidence relating to a mitigating circumstance admissible, (2) one of the mitigating circumstances, § 413 (g) (1) is the absence of a conviction of a crime of violence, and (3) evidence of a crime of violence short of that listed in the mitigating circumstance might tend to "wipe out" the weight given to the mitigating circumstance, the Court concludes that such evidence is inadmissible as not being within the "limits" of § 413 (g) (1) and § 413 (c) (1) (i). Using similar logic, § 413 (c) (1) (iii) is interpreted as "restrict[ing] the type of evidence relating to other crimes that is admissible to evidence of other crimes for which there has been a conviction."

Only after examining the "context" of the statute being construed in isolation and drawing its conclusions, does the Court turn to the statute itself. Although acknowledging that the plain and unambiguous language of § 413 (c) (1) (v) provides that under certain circumstances "any other evidence" is admissible, the Court nonetheless finds that if evidence short of a conviction is admitted, § 413 (c) (1) (i) and (iii), as interpreted, "would be surplusage or meaningless." Although the Court does not acknowledge it, the rationale used to reach its conclusion would in fact render § 413 (c) (1) (v) "surplusage or meaningless," since no evidence outside the narrow categories created in § 413 (c) (1) (i) through (iv) would be admissible.

The Court's reasoning is a textbook illustration why a statute must be construed in context rather than isolated as the Court does here, and the provisions harmonized rather than needlessly set in conflict. When the full text of § 413 (c) (1) is examined,[3] it is patently evident that § 413 (c) (1) (i) through (iv) delineates categories of evidence that are to be admissible *per se* in a sentencing hearing. Section 413 (c) (1) (v) completes the picture by providing for the admissibility of other evidence, but only if the court finds that it has probative value and is relevant to sentence, and further that

---

**3.** "(c) *Evidence; argument; instructions.* — (1) The following type of evidence is admissible in this proceeding:

(i) Evidence relating to any mitigating circumstance listed in subsection (g);

(ii) Evidence relating to any aggravating circumstance listed in subsection (d) of which the State had notified the defendant pursuant to § 412 (b);

(iii) Evidence of any prior criminal convictions, pleas of guilty or nolo contendere, or the absence of such prior convictions or pleas, to the same extent admissible in other sentencing procedures;

(iv) Any presentence investigation report. However, any recommendation as to sentence contained in the report is not admissible; and

(v) Any other evidence that the Court deems of probative value and relevant to sentence, provided the defendant is accorded a fair opportunity to rebut any statements."

Code (1957, 1982 Repl. Vol.), Art. 27, § 413 (c) (1).

the defendant has been accorded a fair opportunity to rebut the evidence. As with other proffers of evidence, if the probative value of the evidence is outweighed by the danger of unfair prejudice to the defendant, the court may in its discretion exclude it. Thus, the subsections of § 413 (c) (1) define types of evidence which are or may be admissible, and provide standards to guide that process. With one exception, § 413 (c) (1) does not exclude evidence. That exception is § 413 (c) (1) (iv), which explicitly excludes sentence recommendations contained in admissible presentence investigation reports. The basis for the exclusion is apparently the accepted principle that opinions of other persons as to the ultimate decision before the sentencer should not be received in evidence. Indeed, the language of § 413 (c) (1) (v) stands in open rebuttal to the Court's assumption as to the purpose of the section. By supplementing the specifically enumerated categories of admissible evidence, § 413 (c) (1) (v) assures that all possible relevant information will be before the sentencer. Thus construed, there is no ambiguity or conflict within the statute.[4]

---

4. The provisions of the Maryland statute are somewhat more detailed than those contained in the Model Penal Code's death penalty provisions, but similar broad language is used for the admissibility of other types of evidence:

"In addition, evidence may be presented as to any matter that the Court deems relevant to sentence, including but not limited to the nature and circumstances of the crime, the defendant's character, background, history, mental and physical condition and any of the aggravating or mitigating circumstances enumerated in Subsections (3) and (4) of this Section. Any such evidence, not legally privileged, which the Court deems to have probative force, may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant's counsel is accorded a fair opportunity to rebut such evidence."

Model Penal Code, § 210.6 (2), 10 Uniform Laws Annotated (1974).

"In the proceeding, evidence may be presented as to any matter that the Court deems relevant to sentence, including but not limited to the nature and circumstances of the crime, the defendant's character, background, history, mental and physical condition and any of the aggravating or mitigating circumstances enumerated in Subsections (3) and (4) of this Section. Any such evidence, not legally privileged, which the Court deems to have probative force, may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant's counsel is accorded a fair opportunity to rebut such evidence."

Having created a spurious ambiguity in the statutory language, the Court seeks support for its view in the legislative history of the Act, citing language of bills rejected by the Legislature or vetoed by the Governor. The only arguably relevant history cited is a letter from the Governor's Chief Legislative Officer to the General Assembly concerning the bill which eventually was enacted. In a discussion of the scope of a mitigating circumstance (§ 413 (g) (1)), the letter notes that, rather than limiting the mitigating circumstance to a defendant with no significant history of prior criminal activity, "the draft limits the type of past criminal activity [which would preclude finding the mitigating circumstance] to that which is relevant to the decision in a murder case [*i.e.* a crime of violence]." In other words, in the absence of a conviction of a crime of violence, the defendant must be accorded the benefit of the mitigating circumstance listed in § 413 (g) (1). As we held in *Johnson, supra,* this is so even where there is reliable evidence of a crime of violence committed by the defendant for which he has not yet been convicted. However, there is, very simply, nothing in the legislative history of the death penalty statute to indicate that the legislature intended to exclude this type of evidence from the sentencing authority's consideration.

## III.

Aside from questions of stare decisis or the proper interpretation of § 413 (c) (1), the challenged evidence was properly admitted as relating to a mitigating circumstance advanced by the defendant — the absence of a conviction for a crime of violence. The State conceded, as it had to, that the defendant had not, as of the trial date, been convicted of such a crime. However, the State was entitled to present evidence relating to the mitigating circumstance to aid the sentencing jury in interpreting and evaluating the circum-

---

*Id.* (alternative § 210.6 (2)).
*See generally, id.* (1983 Supp.), Model Sentencing and Convictions Act, § 3-109 (1) ("If appropriate for the offense, aggravating factors, if not themselves necessary elements of the offense, may include . . . the defendant has a recent history of convictions or criminal behavior.").

stance in its decision-making process. *See, e.g., Bartholomey v. State,* 267 Md. 175, 297 A.2d 696 (1972). The mitigating value of the circumstances derives from the inference that the murder was an isolated event rather than the culmination of a series of other violent crimes committed by the defendant. Here, reliable evidence of two other murders, one before and one after the instant crime, is of obvious value in properly weighing the mitigating circumstance. That the evidence may convince the sentencer that the circumstance should be afforded little mitigating weight does not render it inadmissible; indeed, that is the purpose for its introduction. The sentencing authority must be guided by the aggravating and mitigating factors, but may not be limited to an uninformed or arithmetic balancing of these factors. The Supreme Court recently considered a challenge to a death sentence based in part on the sentencer's use of personal experiences in weighing the statutory factors. In upholding the sentence, the Court opined:

> "We have never suggested that the United States Constitution requires that the sentencing process should be transformed into a rigid and mechanical parsing of statutory aggravating factors. But to attempt to separate the sentencer's decision from his experiences would inevitably do precisely that. It is entirely fitting for the moral, factual, and legal judgment of judges and juries to play a meaningful role in sentencing. We expect that sentencers will exercise their discretion in their own way and to the best of their ability. As long as that discretion is guided in a constitutionally adequate way, see *Proffitt v. Florida,* 428 U. S. 242 (1976), and as long as the decision is not so wholly arbitrary as to offend the Constitution, the Eighth Amendment cannot and should not demand more." *Barclay v. Florida,* U.S. [33 Crim. L. Rptr. 3292, 3295 (filed July 6, 1983)].

The Court today unwisely places a set of blinders on the sentencing authority which severely limits its access to

relevant and probative evidence so vitally necessary in discharging its sentencing function. For the reasons stated, I cannot subscribe to the Court's decision in this case.

Judges Smith and Rodowsky have authorized me to state that they concur with the views expressed herein.